# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 8, 2005          Decided June 23, 2006

No. 04-1400

MANHATTAN CENTER STUDIOS, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

No. 04-1417

MANHATTAN CENTER STUDIOS, INC.,
CROSS-RESPONDENT

v.

NATIONAL LABOR RELATIONS BOARD,
CROSS-PETITIONER

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

*Peter D. Stergios* argued the cause for the petitioner/cross-respondent. *Patrick M. Collins* was on brief.

*Stacy G. Zimmerman*, Attorney, National Labor Relations Board, argued the cause for the respondent/cross-applicant. *Arthur F. Rosenfeld*, Acting General Counsel, *Margery E. Lieber*, Acting Assistant General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Jill A. Griffin*, Attorney, National Labor Relations Board, were on brief.

Before: HENDERSON and GRIFFITH, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Dissenting opinion filed by Circuit Judge HENDERSON.

PER CURIAM: Petitioner Manhattan Center Studios (MCS) seeks review of an order of the National Relations Board (NLRB or Board) finding that it committed an unfair labor practice (ULP) in refusing, *inter alia*, to bargain with a union certified by employee vote. After the certification election, MCS learned that one of its supervisory employees had, before the election, improperly distributed union authorization forms and solicited the unit employees to sign them. MCS refused to bargain on that basis, contending the election was not valid. It claimed that its supervisory employee's subsequently discovered misconduct constituted an affirmative defense to the ULP charge. The Board disagreed. Before us, MCS argues that, in denying it the opportunity to contest the validity of the election, the Board misapplied its precedent regarding newly discovered evidence. The Board cross-petitions for enforcement of its order. Because we find that the Board erred in applying its "due diligence" standard—used to permit an untimely election challenge based on newly discovered evidence—to the facts of this case, we remand for further proceedings.

3

**I.**

MCS is a corporation based in New York City that offers its facility for rent for theatrical and musical productions.[1] On February 19, 2003, stagehands and production staff (production employees) employed by MCS voted by a 5-1 margin to certify Theatrical Stage Employees Local No. One (Union or Local One) as the collective bargaining representative for their seven-employee bargaining unit. *See* Tally of Ballots, NLRB Case No. 2-RC-22677 (Feb. 19, 2003), reprinted at Joint Appendix (JA) 10. MCS did not file an objection to the election within seven days after the election as required by 29 C.F.R. § 102.69(a).[2] Eight days later, on February 27, the Board certified the Union as the representative of the production employees' bargaining unit and, on March 7, the Union wrote to MCS's CEO Russell Arnold requesting both available dates to begin bargaining and information on terms and conditions of employment needed to formulate its bargaining proposals.

On March 20, MCS responded to the Union's request, refusing to bargain or to turn over any employee information. Its letter stated that "it has recently come to our attention that an

---

[1] Unless otherwise noted the facts are taken from the Board's order, *Manhattan Center Studios, Inc.*, 342 NLRB No. 131 (2004), reprinted at Joint Appendix (JA) 79. Also all dates refer to 2003 unless otherwise noted.

[2] 29 C.F.R. § 102.69(a) provides: "Within 7 days after the tally of ballots has been prepared, any party may file with the Regional Director an original and five copies of objections to the conduct of the election or to conduct affecting the results of the election, which shall contain a short statement of the reasons therefor."

MCS supervisor was improperly involved in organizational activities on behalf of Local One. As a result, it appears that Local One is not validly and lawfully certified as the bargaining representative of an uncoerced majority of MCS's stagehands and production employees." Letter from Russell Arnold, CEO, MCS, to James J. Claffey, Jr., Legitimate Theater Business Manager, JA 13. The Union then filed two ULP charges against MCS and on May 30 the Board issued a complaint charging MCS with a violation of sections 8(a)(1) and (5) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), (5), in refusing the Union's requests to bargain and to provide information following a valid certification.[3] JA 18. In its answer to the complaint MCS admitted it had refused to bargain but offered an affirmative defense to the ULP charges—namely, that the "Union's election petition was tainted by unfair labor practices, including improper supervisory involvement in the organizing campaign." JA 48. MCS maintained that after the Union was certified on February 27—and, significantly, after the period to object had expired, *see* 29 C.F.R. § 102.69(a)—it learned that one of its supervisory employees, Technical Coordinator Gustavo Garces, had distributed the Union's authorization cards before the election and solicited employees to sign them, thereby tainting the unit employees' exercise of their "right to bargain collectively through representatives of their own choosing" in violation of section 8(b)(1) of the Act.

---

[3] Section 8(a)(1), in pertinent part, forbids an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" under section 7 of the Act to organize and bargain collectively. 29 U.S.C. § 158(a)(1). Section 8(a)(5), in pertinent part, forbids an employer "to refuse to bargain collectively with the representative of his employees." *Id.* § 158(a)(5).

*See* 29 U.S.C. § 158(b)(1);[4] JA 63. MCS learned of Garces's organizing activities from Michael Spony, a non-unit employee, sometime in March. JA 52. According to the affidavits of Spony and CEO Arnold, Spony told Arnold that Garces had boasted to Spony of Garces's "spearhead[ing] the Union's campaign to organize [MCS's] production employees" during a conversation the two had had in November 2002. JA 53, JA 15. Because the information regarding Garces's misconduct "was not previously available" to MCS, MCS argued that, notwithstanding the representation proceeding had closed when the unit employees voted to certify the Union as their representative and the period for filing objections had expired, it could nonetheless properly raise the issues of his misconduct and its effect on the election in the then-pending ULP proceeding in order to challenge the validity of the Union's certification and thus undergird its refusal to bargain. MCS Mem. of Law in Opp'n to Mot. for Summ. J. at 12, JA 67. Because it was unaware of Garces's misconduct until March, it could not have timely objected to the election on that basis. Nonetheless, MCS argued, it remained free to challenge the election because, in its words, "a party is entitled to litigate representation issues concerning coercive pre-election conduct if the party has obtained newly discovered evidence or did not otherwise have an opportunity to litigate the issues in the prior

---

[4]Section 8(b)(1) provides in relevant part that "[i]t shall be [a ULP] for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in section 157", 29 U.S.C. § 158(b)(1), including "their right to select their [bargaining] representative," *NLRB v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers*, 434 U.S. 335, 344 (1978).

representation proceeding." JA 64 (citing *San Antonio Portland Cement Co.*, 240 N.L.R.B. 1168 (1979)). Its evidence was new, MCS claimed, because it did not learn of the supervisory taint until after the seven-day period. *Id*.

On September 24, 2004, the Board issued its Decision and Order granting summary judgment to the General Counsel. *Manhattan Ctr. Studios, Inc.*, 342 NLRB No. 131 (2004) (*MCS*), JA 79. It began by noting "the Respondent did not file any objections to the conduct of the election" within seven days thereafter; the representation proceeding had therefore closed and could be "reopened to litigate [election impropriety] issues only if [MCS] could establish that it has newly discovered evidence." *Id.*, slip. op. at 2. It found that MCS had not met that burden. The Board described newly discovered evidence as evidence of facts that existed at the time of the representation proceeding "which could not be discovered by reasonable diligence." *Id.* (citing *APL Logistics, Inc.*, 341 N.L.R.B. No. 132, slip op. at 1 (2004)). It then concluded:

> [T]he Respondent has failed to present any information indicating that prior to the expiration of time in which to file objections to the election, it engaged in an attempt to uncover any potential improprieties in that proceeding. *Thus*, the Respondent has failed to establish that the evidence at issue *could not have been discovered* earlier through the exercise of reasonable diligence.

*Id.* at 2, JA 80 (emphasis added). Because MCS had no affirmative defense to its refusal to bargain with the Union, no genuine issue of material fact existed as to MCS's refusal to bargain and, accordingly, the General Counsel was entitled to summary judgment. MCS timely petitioned for review.

## II.

We review the Board's order to determine "whether the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Antelope Valley Bus Co., Inc. v. NLRB*, 275 F.3d 1089, 1092 (D.C. Cir. 2002) (quotations omitted). The Board cannot "ignore its own relevant precedent but must explain why it is not controlling." *BB&L, Inc. v. NLRB*, 52 F.3d 366, 369 (D.C. Cir. 1995). "[W]here an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995). If we conclude that the Board misapplied or deviated from its precedent, we often remand with instructions to remedy the misapplication/deviation. *Lee Lumber & Bldg. Material Corp. v. NLRB*, 117 F.3d 1454, 1460 (D.C. Cir. 1997) (remanding to resolve inconsistency between Board standard and its application therein).

As noted, under the Board's regulations, a party has seven days after the tally of ballots in a certification election to file "objections to the conduct of the election or to conduct affecting the results of the election." 29 C.F.R. § 102.69(a). The Board's seven-day deadline reflects its long-standing policy favoring finality in election results in order to further industrial peace. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324, 331–32 (1946). Section 102.48(d)(1) of the Board's regulations, however, permits a party to move for reconsideration or reopening of the record after the expiration of the specified period based on "newly discovered evidence." 29 C.F.R. § 102.48(d)(1).[5] Board

_____

[5] 29 C.F.R. § 102.48(d)(1) provides that "[a] party to a proceeding before the Board may, because of extraordinary

precedent interpreting section 102.48(d)(1) sets forth two requirements for newly discovered evidence: one is straightforward and the other constitutes the nub of this case. First, newly discovered evidence must be evidence of facts in existence at the time of the proceeding in question. *See MCS*, 342 N.L.R.B. No. 131, slip. op. at 1. Second, the moving party must have been "excusably ignorant" of the existence of the evidence. *See Seder Foods Corp.*, 286 N.L.R.B. 215, 216 (1987). To find excusable ignorance, the Board applies a "due diligence"/"reasonable diligence" standard whose aim is to ensure that the moving party could not have discovered and brought the evidence to the Board's attention during the seven-day period.[6] *See Fitel/Lucent Techs., Inc.*, 326 N.L.R.B. 46, 46 n.1 (1998) (party "seeking to introduce evidence as newly

---

circumstances, move for reconsideration, rehearing, or reopening of the record after the Board decision or order. . . . Only newly discovered evidence, evidence which has become available only since the close of the hearing, or evidence which the Board believes should have been taken at the hearing will be taken at any further hearing."

[6]In providing an avenue for relief based on new evidence, the Board sought to mirror Rule 60(b)(2) of the Federal Rules of Civil Procedure. *See* F.R. Civ. P. 60(b)(2) (allowing relief from final judgment or order based on newly discovered evidence which by due diligence could not have been discovered in time to move for new trial under Rule 59(b)); *Pace Oldsmobile, Inc.*, 256 N.L.R.B. 1001, 1003 (1981) (petition for reopening of proceedings based on new evidence premised on same considerations as under Rule 60(b)(2)). Relief under Rule 60(b)(2) requires that the moving party show, among other requirements, that he was diligent in discovering the new evidence. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732–35 (7th Cir. 1999).

discovered must also show facts from which it can be determined that the movant acted with reasonable diligence to uncover and introduce the evidence").

Board precedent includes at least two formulations of the due/reasonable diligence standard: one—which we dub the "conducted investigation" version—to be used if the moving party asserts its due diligence to establish that subsequently discovered facts constitute new evidence, *see, e.g.*, *Superior Prot., Inc.*, 341 NLRB No. 86, slip. op. at 4 (2004) (*Superior Protection*) ("[i]n order to establish that evidence is 'newly discovered,' the movant must show facts indicating that it 'acted with reasonable diligence to uncover and introduce the evidence' and that it was therefore 'excusably ignorant' of the evidence previously") (internal citations omitted); and another—which we dub the "hypothetical investigation" version—to be used in circumstances where due diligence was not exercised, in which case the Board asks whether the exercise of due diligence would have timely uncovered the evidence. *See, e.g.*, *APL Logistics*, 341 NLRB No. 132, slip. op. at 1 (2004) (defining new evidence as "evidence of facts in existence at the time of the hearing which could not be discovered by reasonable diligence"); *Jason/Empire*, 212 N.L.R.B. 137, 138 (1974) ("[A]lthough the alleged [offer to waive union initiation fees] was made at a preelection union meeting, the Respondent has failed to show that with due diligence it could not have uncovered the evidence in time to file timely objections . . . ."); *see also Amalgamated Clothing Workers of Am. v. NLRB*, 424 F.2d 818, 827 (D.C. Cir. 1970) (affirming Board determination that employer's evidence was not new because "no explanation was offered as to why this evidence was not discovered *or could not have been discovered* by the exercise of due diligence") (emphasis added).

Apart from the two formulations of the Board's due diligence standard, the Board has been less than clear as to which one it is applying in a particular case. The decision in *Dickerson Florida, Inc.*, 272 N.L.R.B. 63 (1984) is an example. In that case, after the seven-day period closed and the employer refused to bargain, it asserted as an affirmative defense to the ULP charge that the election was invalid due to election improprieties including a threat by a union member and the union's pre-election offer to waive initiation fees. As in this case, a non-unit employee subsequently advised the employer of the threat and the offer and the employer sought to use both as newly discovered evidence. The Board found that the employer had not demonstrated "that the facts of the alleged threat and unlawful offer of waiver were not previously discoverable [by the employer] through the exercise of due diligence" and therefore disallowed them. *Id.* at 63. Whether the Board meant that the employer had not shown that the evidence was not discoverable earlier because it had not exercised due diligence or because the evidence would not have been discovered had the employer exercised due diligence is not clear.

If, as the Board argues here, the standard is that an employer has an affirmative duty to exercise due diligence to discover *any* evidence of irregularity in any election in order to use that evidence to permit the untimely reopening of the representation proceeding, the employer will almost certainly run a risk inasmuch as a post-election investigation conducted within the seven-day period, as the Board order counsels, *see MCS*, 342 NLRB No. 131, slip. op. at 2, without specific evidence of misconduct would almost always involve questioning of employees. *See* 29 U.S.C. § 158(a)(1); *cf. Crossing Recovery Sys., Inc.*, 2005 NLRB LEXIS 375, *73 (2005) (employer questioning employees regarding upcoming

11

certification vote constituted coercive conduct and unlawful interrogation in violation of section 8(a)(1)); *Overnite Transp. Co.*, 254 N.L.R.B. 132, 133 (1981) (employer questioning employees before and immediately after certification vote violated section 8(a)(1) because it "implied surveillance of the employees' union activities").[7]   Moreover, employer-side counsel might have to advise their client to communicate with its supervisors and perhaps even its employees during the organizational campaign whether or not the employer has cause

---

[7]The Board points to decisions in which it has "allowed management representatives to conduct post-election interviews of employees for purposes of seeking information in support of objections." Resp't's Br. 22–23 n.5 (citing *Johnnie's Poultry Co.*, 146 N.L.R.B. 770, 774–76 (1964), *enforcement denied*, 344 F.2d 617 (8th Cir. 1965); *W.T. Grant Co.*, 185 N.L.R.B. 88 n.1 (1970); *Summa Corp.*, 220 N.L.R.B. 877, 879–80 (1975)).   Those cases give an employer a limited privilege to question its employees regarding election irregularities without incurring section 8(a)(1) liability "*where an employer has a legitimate cause to inquire.*" *Johnnie's Poultry Co.*, 146 N.L.R.B. at 774 (emphasis added).  An employer's good faith doubt regarding the certification election results has been found to be "a legitimate cause to inquire," *see Summa Corp.*, 220 N.L.R.B. at 879–80.   Here, however, the Board apparently decided that the obligation to inquire attaches whether or not the employer has cause to do so.  In *Summa Corp.*, the employer interviewed unit employees two days after the certification election in response to a rumor regarding the union's misrepresentation made at a precertification meeting.  *Summa Corp.*, 220 N.L.R.B. at 878.  In *W.T. Grant*, the employer interviewed unit employees to investigate rumors regarding pre-election threats made by pro-union employees on the workroom floor.  What distinguishes those employers from MCS is that they had cause to inquire; MCS did not.

to believe anything is amiss.[8]  A union would be exposed to similar risks.  *See* 29 U.S.C. § 158(b)(1); *cf. Am. Postal Workers Union*, 328 NLRB 281, 282 (1999) (union member interrogating employee regarding her union support violated section 8(b)(1)).

Because the Board has been less than clear in applying its newly discovered evidence standard, it is unlikely that an employer in MCS's circumstances knows if it must make an effort to uncover a problem of any kind in order to mount an untimely challenge to an election or whether, consistent with *APL Logistics*, it will be required to show that it could not have with due diligence discovered the particular evidence it seeks to submit as newly discovered.   The first interpretation is deceptively straightforward: the employer either conducted an investigation or it did not.   But what makes an investigation diligent enough to meet the standard?[9]  Does the employer have to show that it interviewed all of its supervisors?  Here, that

---

[8]It appears that this was the course of action offered by the Board's counsel at oral argument. *See* Oral Arg. Tr. 14 ("Well, I think in that case [where the employer had no reason to suspect election impropriety] they would have to come to the Board and say that they found out about this misconduct and, you know, make some sort of representation about, oh, [how] they were–you know, maybe–you know, communicating with employees or something to that extent.  I mean, generally in these situations when you have a company that is involved in the organization campaign they use their supervisors as a way to keep their employees informed about the company's position and things.").

[9]The Board's counsel acknowledged at oral argument that the Board has never expressly declared what an employer must do to establish that it was reasonably diligent. *See* Oral Arg. Tr. 12–13.

probably would have been futile because the supervisor Garces was himself the culprit.[10] The second interpretation, on the other hand, requires the employer to prove a negative: that the evidence could not have been discovered had due diligence been exercised. One would assume under this interpretation that, if a non-investigating employer could show the evidence was not discoverable even with due diligence, such as where the employer had no reasonable way of knowing or discovering whether improprieties had occurred, its burden would be met. But this is unclear from the Board's order here. Instead of choosing either the "conducted investigation" version or the "hypothetical investigation" version of the due diligence standard and explaining its choice, the Board confused the two, treating them as if they were the same.

MCS argues that it was excusably ignorant of Garces's actions and should therefore be allowed to submit evidence of those actions as newly discovered evidence because it had no reason to inquire of Spony or any other employee about election improprieties before March and it acted with reasonable diligence to proffer the evidence once it learned of them from Spony. *See* Pet'r's Br. 12–13. And even if it had investigated for any impropriety either before the election or within the seven-day period, MCS maintains that it would be reasonable to

---

[10]The Board has found that conduct similar to Garces's alleged conduct "interfered with employees' freedom of choice to such an extent that it materially affected the outcome of the election." *Chinese Daily News*, 344 N.L.R.B. No. 132, slip. op. at 3–5 (2005) (unit supervisor distributing union authorization cards to unit employees "interfered with employees' freedom of choice to such an extent that it materially affected the outcome of the election").

assume, given Garces's supervisory status, that neither he nor his subordinates would have voluntarily disclosed his involvement in the organizing drive. *Id.* at 12. On the other hand, MCS contends, if it is held to the *Superior Protection* iteration of the test, according to which it must show that "it acted with reasonable diligence to uncover and introduce the [newly discovered] evidence" and "was therefore excusably ignorant of the evidence previously," *Superior Prot., Inc.*, 341 NLRB No. 86, slip. op. at 4 (quotations omitted), it is effectively foreclosed from using the newly discovered evidence rule because it did not know, nor have reason to know, of Garces's misconduct. It argues therefore that it should not be held to have failed to exercise due diligence to investigate an election irregularity of which it was excusably ignorant.

In response the Board points to rumors circulating among employees in late 2002 regarding Garces's support of the Union, alluded to in Spony's affidavit as Garces's own claim that he "[did]n't care who kn[ew]" about his pro-Union actions. Resp't's Br. 17; JA 15. The Board suggests that MCS cannot use the newly discovered evidence rule because, given the rumors and small size of the bargaining unit, due diligence would have uncovered Garces's misconduct. *See* Resp't's Br. 17 ("MCS offers no explanation why, in a bargaining unit of only seven employees, it could not have discovered earlier that its own supervisor was 'spearheading' the union campaign, especially given MCS's own assertion that rumors about Garces's involvement were circulating among its employees months before the election."). But the Board mischaracterizes MCS's "own assertion"; it was Spony, not MCS, who stated that *he* knew that rumors regarding Garces's misconduct were circulating among employees in late 2002. MCS did not hear of

these rumors until March 2003.[11]  *See* Spony Decl. ¶ 3, JA 15; Arnold Decl. ¶ 7, JA 54.

It is true that in *Soft Drink Workers Union Local 812 v. NLRB*, 937 F.2d 684 (D.C. Cir. 1991), we stated that in order to challenge election results in a ULP proceeding based on newly discovered evidence, the moving party " 'must have made some effort to obtain the evidence at the time' " challenges could have been made, that is, within the seven-day period. *Id.* at 688 (quoting *Teamsters Local 911 (General Felt)*, 275 N.L.R.B. 980, 981 (1985)).  But that statement was based on circumstances absent here: evidence of impropriety, or leading to a showing of impropriety, was in fact timely discoverable.  The union in *Soft Drink Workers*, in addition to arguing that the picketing it engaged in after it lost a certification election did not violate the Act, sought to offer evidence showing that the employer had padded the payroll with sufficient replacement employees to ensure the union would lose.  Before the election, however, the employer had given the union an *Excelsior* list[12] of all

---

[11]Garces's own knowledge of his misconduct plainly cannot be imputed to MCS because his interest was adverse to MCS's.  *See Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066–67 (8th Cir. 1996) ("Knowledge obtained by a corporation's key employees, officers, and directors, obtained in the course of their duties, is generally imputed to the corporation.  We recognize, of course, that if the employee, officer, or director has an interest adverse to the corporation, his knowledge is not to be imputed.") (citations omitted).

[12]Under *Excelsior Underwear, Inc.*, 156 N.L.R.B. 1236, 1240–41 (1966), an employer must provide the union with the names and addresses of all employees eligible to vote in a bargaining unit

replacement workers. We concluded that, because the union had that list, "[b]oth the number of replacement workers and their possible effect upon the election were thus apparent to the Union as of the time of the representation proceeding. Having failed then to raise its objection to the election, or to 'ma[k]e some effort to obtain the evidence' necessary to make good such an objection, the Union cannot be heard now to complain of its preclusion." *Id.* (alteration in original). The union's failure to inquire into the validity of the list before the representation proceeding barred it from using the list as newly discovered evidence. MCS, however, had no reason to suspect pre-election misconduct that, according to the Board, it was required to exercise due diligence to uncover—much less did it possess evidence on which it could have based its exercise of due diligence.

On remand, the Board should explain (1) the relationship between the "conducted investigation" and "hypothetical investigation" iterations of the due diligence standard, (2) which iteration it is applying here and why it chose that iteration under the facts of this case, (3) if the Board is applying the "conducted investigation" iteration of the standard, whether there is a minimum level of investigation in the absence of notice of a violation or, alternatively, whether that standard requires specific inquiries in the absence of some notice of misconduct, and, if so, what these inquiries must be and how they are to be conducted without engaging in coercive and unlawful interrogation or interfering with the election in violation of § 8 (a)(1) or § 8 (b)(1), and (4) if the Board is applying the

certification election.

"hypothetical investigation" iteration, how a party in MCS's position—that is, an employer without notice—shows that the information sought to be admitted as new could not have been discovered in the exercise of due diligence.

For the foregoing reasons, we remand to the Board for further proceedings consistent with this opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, *dissenting*:

I dissent from the remand because I believe the Board erred as a matter of law in concluding that an employer without notice of management misconduct that tainted an election is *not* excusably ignorant under the due diligence test. Accordingly, I would grant MCS's petition for review and vacate the Board's order.

If a Board decision is contrary to law, we are well within our authority to grant a petition for review. *See Int'l Alliance of Theatrical and Stage Employees v. NLRB*, 334 F.3d 27, 34 (D.C. Cir. 2003) (*International Alliance*) (granting petition for review and vacating unfair labor practice finding because Board interpretation of "any employee who engages in a strike" under section 8(d) of Act was "in conflict with both interpretive precedent and the statute's structure" and produced "internal inconsistency" and "irrational results in practice"); *see also Detroit Typographical Union v. NLRB*, 216 F.3d 109, 122 (D.C. Cir. 2000) (granting petition for review because Board conclusion constituted legal error). Legal error can take the form of an inconsistent application of relevant precedent, *see BB&L, Inc. v. NLRB*, 52 F.3d 366, 369 (D.C. Cir. 1995), an unreasonable interpretation of the agency's enabling statute, *see Jacoby v. NLRB*, 325 F.3d 301, 308 (D.C. Cir. 1994) (citing *Chevron U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984)), or an "unreasoned" extension of a standard to the facts of a particular case, *see Detroit Typographical Union*, 216 F.3d at 118 (Board committed legal error in applying doctrine disallowing employer's implementation of standardless merit pay plan after impasse to case where merit pay plan standard was known to union).

I believe the Board erred if, as it appears, it applied the "conducted investigation" version of the due diligence standard here. The "conducted investigation" iteration *cannot* apply if the employer had no reason to know of any impropriety—including any rumors that might have spurred it to investigate any impropriety—and, for that reason, did not

exercise due diligence. To conclude that MCS must have conducted a far-flung investigation into any irregularity in order to use the newly discovered evidence rule directly contradicts the *Johnnie's Poultry Co.* line of cases, *see* maj. op. at 20 note 7, which authorizes an employer to conduct an investigation *only* if it has cause to inquire. The Board should have found MCS excusably ignorant due to lack of notice regarding Garces's conduct. Whether this resolution fits under the "hypothetical investigation" label fashioned by the majority I do not know but, because I believe remand is unwarranted in view of the Board's error of law, I see no need to tell the Board anything other than "you got it wrong." Here MCS has explained why the evidence "could not have been discovered"—it had no notice of the existence of the facts on which the evidence it now seeks to submit as new are based and *therefore* did not investigate. It has established its excusable ignorance of the existence of those facts and should now be permitted to introduce evidence based on them as newly discovered.

Like the Board's decision in *International Alliance*, its decision here is "in conflict with both interpretive precedent and the [Act]'s structure," "set[s] a standard that could never be met" on these facts, and leads to "irrational results in practice," *International Alliance*, 334 F.3d at 34–35, 37. Accordingly, because I would grant MCS's petition for review and deny the Board's cross-petition for enforcement, I respectfully dissent.