**735 PUTNAM PIKE OPERATIONS, LLC, d/b/a Greenville Skilled Nursing and Rehabilitation Center, Petitioner**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 11–1115, 11–1129.

United States Court of Appeals, District of Columbia Circuit.

April 2, 2012.

Darryl G. McCallum, Shawe & Rosenthal, LLP, Baltimore, MD, for Petitioner.

Linda Dreeben, Deputy Associate General, Julie B. Broido, Supervisory, Milakshmi Varuni Rajapakse, Esquire, National Labor Relations Board, Washington, DC, for Respondent.

Before: HENDERSON, ROGERS and GRIFFITH, Circuit Judges.

### *JUDGMENT*

PER CURIAM.

This appeal was considered on a petition for review and cross-application for enforcement of an order of the National Labor Relations Board and was briefed and argued by counsel. It is

**ORDERED AND ADJUDGED** that the petition for review be denied and the cross-application for enforcement be granted.

The National Labor Relations Board seeks enforcement of its order directing 735 Putnam Pike Operations, LLC ("Putnam Pike") to bargain in good faith with New England Health Care Employees Union, District 1199. Putnam Pike petitions

for review on the ground that the finding that its charge nurses and shift supervisors are not statutory supervisors under Section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11) (2006), was unsupported by substantial evidence in view of their role in discipline, direction, and assignment of staff. The Board's decision will not be disturbed on appeal if the factual findings are supported by substantial evidence in the record, *id.* § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and the Board acts in accordance with its precedent, *Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 816 (D.C.Cir.2006). The Board's finding that Putnam Pike's refusal to bargain violated 29 U.S.C. § 158(a)(1) and (5) is supported by substantial evidence: the bargaining unit consisting of all registered nurses at the nursing home, with specified exceptions for registered nurses who are in fact supervisors (including "floating shift supervisors," *inter alia)*, accurately reflects the evidence and comports with *Oakwood Healthcare, Inc.*, 348 NLRB 686 (2006).

Individuals are statutory supervisors under Section 2(11) only "if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions," and "(2) their 'exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.' " *NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 713, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001) (citation omitted); *accord VIP Health Servs. v. NLRB*, 164 F.3d 644, 648 (D.C.Cir.1999). In *Oakwood Healthcare*, the Board clarified that "to exercise 'independent judgment' an individual must at [a] minimum act, or effectively recommend action, free of the control of others and form an opinion or evaluation by discerning and comparing data." 348 NLRB at 692–93. "[A] judgment is not independent if it is dictated or controlled by detailed instructions, whether set forth in company policies or rules, the verbal instructions of a higher authority, or in the provisions of a collective bargaining agreement." *Id.* at 693. Rather, "the judgment must involve a degree of discretion that rises above the 'routine or clerical.' " *Id.* (citations omitted).

The record supports the Board's finding that Putnam Pike's registered nurses did not exercise disciplinary authority. The "write-ups" and performance evaluations that they completed regarding other staff members were not "final and authoritative" disciplinary actions, *see Jochims v. NLRB*, 480 F.3d 1161, 1170 (D.C.Cir.2007), and they had no negative effects on the reviewed employees' job status or pay, *see id.* at 1173. The only specific evidence offered by Putnam Pike that could have potentially satisfied these criteria related to events in January 2008, when the nursing home was being operated by another management company (Haven Healthcare). The Board had a reasonable basis for excluding this evidence from its review because the record showed that the responsibilities of the nurses under the operation of the prior management company differed from their responsibilities under Putnam Pike's current management company (Genesis HealthCare). *Compare, e.g.,* Haven Healthcare Job Description for Charge Nurse, RN, at 2 (J.A. 288), *with* Genesis HealthCare Job Description for Charge Nurse, at 41–42 (J.A. 279–80). Nor did inclusion in the employee handbook of a progressive disciplinary system establish the charge nurses exercised disciplinary authority under Section 2(11); no evidence was presented to indicate that the system was in effect. *See Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 445 F.2d 237, 243 (D.C.Cir.1971); *BERTHOLD NURSING CARE CTR., INC.*, 351 NLRB 27, 29 (2007).

Putnam Pike's contentions regarding the nurses' authority to direct and assign work fail as well. Although the record indicated that the registered nurses directed staff in the performance of patient-care tasks and resolved minor disputes between staff members, there was no evidence that the nurses were held accountable if the staff failed to perform as directed. A party cannot establish "responsibility to direct" supervisory authority under Section 2(11) without demonstrating accountability. *See Oakwood Healthcare,* 348 NLRB at 691–92; *Beverly Enters.–Minn., Inc.,* 348 NLRB 727, 730–31 (2006).

Substantial evidence also supports the Board's finding that the charge nurses did not exercise independent judgment in assigning staff. The Board could reasonably conclude that the one instance where a charge nurse denied an employee's request to leave early in a non-emergency situation, and the employee renewed her request before the Director of Nursing, indicated the charge nurse lacked final authority. The evidence also showed that shift supervisors can only seek volunteers to replace absent employees and in doing so must follow the procedures and criteria set by Putnam Pike, which relieve them of any discretion in decisionmaking. To the extent they reallocate staff to equalize workloads, no evidence indicated this task involves the use of independent judgment, a necessary element of Section 2(11) supervisory authority. *See Oakwood Healthcare,* 348 NLRB at 687; *Beverly Enters.,* 348 NLRB at 729–30.

Given the evidentiary gaps, the Board reasonably concluded that Putnam Pike failed to carry its burden of proving its registered nurses are statutory supervisors. *See Kentucky River,* 532 U.S. at 712, 121 S.Ct. 1861. In the absence of evidence of primary indicia of supervisory authority, Putnam Pike cannot salvage its challenge by pointing to secondary indicia of supervisory status, *see Jochims,* 480 F.3d at 1173. Putnam Pike's objection that the charge nurses are the highest-ranking nursing employees on the premises from 4:30 p.m. to 6:00 a.m., and therefore must be statutory supervisors fails to acknowledge exclusions from the bargaining unit for registered nurses who are in fact supervisors, including "floating shift supervisors." The absence of a statutory supervisor does not automatically confer supervisory status on the highest-ranking person present. *See id.*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc. See* FED. R.APP. P. 41(b); D.C.CIR. R. 41(a)(1).